May it please the court, my name is Walter Batty. I represent the defendant, Scott Rapella, who is the appellant here. I'd like to reserve five minutes for rebuttal. Your honors, I will keep my eye on my watch, but at the two minute time, I'd also appreciate a notice from the court. Your honors, I'd like to thank the panel for hearing my argument over the phone. I appreciate the opportunity to argue before you today. I should mention that every once in a while I may say excuse me, and I'll just, I hate to put it this way, but put the court on mute just for a second while I talk to my assistant who is operating my computer. Or to get a drink of water because my voice is dry. The basic position here, as the court knows, the defendant's position is that it was plain error for the district court to accept this guilty plan, count one, the bank fraud count. Because there was in fact no factual basis on the element of intent to defraud the bank. Before I discuss the merits, I want to focus on the government's apparent argument in its brief and in its letter that the general waiver rule, at least that's my term for it, the general waiver rule, which is an annoying voluntary guilty plea, waives all non-jurisdictional defects, somehow trumps the factual basis rule under rule 11. If this is not the government's argument, I believe it is, then the brief is not responsive to the defendant's brief. In the government's brief, they cite twice eight cases, but only two even arguably relate to the issue here, which is factual basis. In the letter that they've sent to the court in response to the court's question, I want to quote exactly what they say the issue is, because the defendant disagrees with what the issue is. In the letter, they say that his plea of guilty, proposed plea of guilty, waives his right to challenge the sufficiency of the evidence as it relates to the elements of his offense, because such a challenge is not jurisdictional. That is, with respect to the government's argument, a different argument. Our argument is that there was no factual basis for the plea. And that this argument about the general waiver rule simply doesn't apply to our case. Yes, Your Honor. Yes, sir. Yes. Right. Right. Yes. Yes. Yes. There was no, the first sentence of the indictment, as Your Honor just was reading, does state a crime. That's why we can't argue that there's no crime alleged in count one. The disconnect is in the remaining four sentences, it superficially speaks of bank fraud, but when it's read at its heart, those sentences talk about commercial fraud, the fraud of the online retailer. Sure, here's my problem though. Are you, I'm assuming that if this indictment, count one I should say, were defective, that is, let me frame my question this way. Are you saying that count one could have been challenged as being inadequate to state or allege a scheme to defraud? Then that's where I'm hung up on your argument. Okay. If it's adequate to state the scheme to defraud, to say what is said in count one, how can it be that there's not an adequate factual basis for the plea if your client steps up and says, yeah, that stuff in count one, I did it. Okay. Because of this, Your Honor, it's my view, it may not be correct in terms of the law, but it's my view that the first sentence of count one is enough to make it a sufficient count. There may, there certainly are cases talking about the adequacy of explanation of the fraud. But in the count one other thing, it refers to invalid bank routing numbers, and it also refers to fraudulent account information. Those items of information are enough in the defendant's view to make for an adequate allegation of bank fraud. But when examined, the fraudulent account information was not fraudulent account information. All it was was, in fact, involved one account which was closed, the citizen bank account was closed, and the second, those are five checks on count one, and the sixth check on count one, the VA credit union check, was drawn on insufficient funds. Neither of those make for fraudulent account information. As I explained in the brief, if, regarding the allegedly invalid bank routing numbers, the case law demonstrates that as those allegedly invalid bank routing numbers, there would be no risk of loss if there were invalid bank routing numbers. The government concedes in its brief that, in fact, there were no invalid bank routing numbers. There were no facts which constitute a crime. Is that correct? That's right. All right. And your position, as I understand your brief, is that at the Rule 11 proceeding, having nothing to do with whether or not the indictment states a crime or not, there were never facts set forth on the record which he acknowledged and which you say, we should find constitute the crime of bank fraud. Maybe some other fraud, but certainly not bank fraud. That's correct, Your Honor. That's your position. That is your position. Is that correct? Yes, Your Honor. Okay. You don't deny that the plea was, you deny it was knowing, but you don't deny it was a willful and intelligent plea. Is that correct? I disagree that it was intelligent. I agree that it was voluntary. I should have said voluntary, aren't I? In McCarthy, the court points to one of the advisory committee notes where the committee said, and the court adopted this language, that the reason for the addition of the factual basis requirement to Rule 11 was to guard against a situation where the defendant was voluntarily pleading guilty. But it was not a knowing plea in the sense that the defendant did not understand that his conduct was not a crime. That's exactly our situation here. What's wrong with one of the positions of the government is that you face other charges at this time, your client did, and in order to avoid those charges going forward, your client took the plea to bank fraud in order to avoid what could have been at least the same and perhaps even more grievous consequences. Very often this, I've seen this occur myself many times in state court, someone indicted for murder and they plead manslaughter because they don't want to face getting convicted of murder in the first or second degree and they know they'd rather take a manslaughter than roll the dice, so to speak. What's wrong with the government's position on that? Well, in terms of the facts here, Judge Cowen, two things are wrong. In terms of the facts, the facts don't bear that up. In terms of the indicted charges, there's no doubt, as I conceded in both briefs actually, that he did commit mail fraud in terms of the conduct described in Count 1. There's no doubt there was commercial fraud there, and I'm sure there were mailings, but in terms of why he pled guilty, there's no evidence that he pled guilty to avoid anything. If you take a look at the pre-sentence report, all the conduct discussed in the pre-sentence report is covered by the indictment. The only variation there is that it's bank fraud in Count 1 instead of mail fraud. The government's argument, as I understand it, is that on Count 1, it's no harm, no foul because there was Count 2, the mail fraud count. Well, the difference, of course, is that not only is it a conviction to a count that we allege was not a crime, but in addition, there are consequences that go to this count from the sentencing guidelines. It won't be that if this count is vacated because of the absence of any evidence of a factual basis, that the district court will ultimately decide that there was relevant conduct and sentences in this case. We understand that. We understand that point, Mr. Baggett. You acknowledge that we're here on plain error review. How does that affect our final part of our analysis? What do we have to find? In terms of the error and the plain part, we think it's error and we think it's plain because factual basis is something that there was absolutely no evidence at all of an attempted fraud. The third and fourth are, as the court knows, prejudice that it affected substantial rights and that there be a miscarriage of justice. The family case cited in both of my briefs from I believe the 8th Circuit stands for the proposition that if there is no crime, that is both prejudicial and a miscarriage of justice. The Hedema case, which was pointed out in the court's letter to the lawyers, to the party, even though it's on a different issue, it's on a case where the defendant did not allege that there was no factual basis. But instead, because in that case there was, at least on the surface, a factual basis in terms of what the prosecutor said at the guilty plea, it says that the prosecutor's statement turned out to have been incorrect. So he didn't argue factual basis was wrong. He argued that there's an exception to the general waiver rule when there is no crime. So the panel agreed that even in that situation, the general waiver rule does not apply. And that's our argument here. There is no crime. A bank fraud. Thank you. Let me ask if my colleagues have any other questions. We've given you another five minutes or so. Any other questions? Good. Well, we'll have you back on rebuttal. Thank you very much. Thank you. Ms. Whitaker? We'll give you some additional time if you would like it as well, Ms. Whitaker. Thank you, Your Honor. My name is Barbara Post Whitaker, and I represent the United States in this prosecution of Mr. Rapallo. Good. Don't stray too far from the microphone, because we listen to these tapes. Your Honor, it is my position in this case that the count one of the indictment adequately charges the offense of bank fraud, and that Mr. Rapallo's plea waived any right to contest the sufficiency of the evidence. Why don't we stick with the facts in the case? Do the facts constitute bank fraud in this case, as you understand? Yes, they do, Your Honor. In the instance of Citizens Bank... You're moving away from the mic, please. Get in front. I don't care about the small mic. It's the big mic. Oh, okay. I was instructed to watch the small... Thank you. Actually, Your Honor, it's both. As to Citizens Bank, although they were invalid account numbers, that is an attempt with respect to Citizens Bank, and a factual impossibility because it could not be completed. But it is an attempt, and I think that the evidence satisfies the sufficiency on that aspect as to Citizens. Does that have to be indicted separately, the attempt, or is that... First time I heard the word attempt in this whole case. Well, the indictment reads attempt in this case. Not in the briefing or any of the arguments that I've read so far. I agree with you that that argument was not made before, but in preparing for this argument today, it's one of the few statutes that allows an attempt, the bank fraud statute, right in it. I thought you actually appeared to concede in the letter that you sent to us on October 22nd that the Citizens Bank issue was out of the case. Your footnote 1 says there's no risk of actual loss to the bank, and there's no mention of attempt. So I sort of had understood you to be saying your case hung on the VA Credit Union. Were we mistaken? Was I mistaken in understanding that? No, Your Honor, that is an alternative position, that even if you strike Citizens Bank from that count, it's still a valid bank fraud count. And it could have been charged in two counts, but I want you to understand that the way this case came to me was in the context of Mr. Rapella being prosecuted for another offense. There was an immediate recognition by his counsel that this was always going to be a plea. We just never got there. Mr. Rapella is somewhat very slow to recognize things. Well, that raises an important question for me. If you're in the courtroom with a defendant that has been sent away for evaluation, so everybody is aware that there are some issues about mental acuity and understanding. And this individual says to the judge, there's sort of a standard colloquy preceding which the government in its proffer identifies the victim as Sytergy, not as either bank. No bank is mentioned as a victim. And you then have the defendant, somewhat slow as you put it, who when asked, what did you do that makes you guilty here, says I defrauded these companies. It doesn't say I defrauded the banks. It could be certainly read to be in the context of defrauding the computer companies. At that stage of things, under those circumstances, is there an obligation on the part of the prosecution and on the part of the court, certainly on the part of the defense too perhaps, to say, wait a second. The victims here have been identified as Sytergy. There's been no mention of the banks as victims. He just said, these companies, what are we talking about here? Is there any obligation to kind of hold up and figure out what's going on under those circumstances? Well, Your Honor, I will answer your question, but first let me apologize. By using the word slow, I meant that Mr. Rapallo was a procrastinator. Oh, I thought you were making a reference to the fact that he had been sent off. And in fact, in his papers, his counsel says he's not able to understand things very well. Well, that may be their position, but he was mentally acute. Neither I nor the district court ever bought the baggage that he was trying to sell us with respect to his mental condition. The district court bought it enough to have him evaluated, right? Well, he was asked to have him evaluated, and Judge Condaboy, out of an abundance of caution, I believe, agreed to do it. But in the end, did not buy their argument that he was entitled to a departure under the sentencing guidelines for what those evaluations showed. I mean, he's 32 years old, and he has a history of defrauding banks, whether it is by bad check or bank larceny or bank fraud. By my count, he has 37 charges. But you'd agree, certainly, that the fact that he's got a record doesn't mean, that doesn't prove bank fraud here. Government's got an obligation to prove a case, right? Charge and prove a case. There's no question about that, but to make a thought that this man didn't understand what he was doing is, seems to me, wrong. He was fully aware of how he was manipulating not only the checks and the bank numbers, he knew exactly what he was doing. Ms. Whitaker, let me ask this. You have to acknowledge, do you not, that no bank lost 10 cents in this entire deal? No one lost a dime. No bank. Well, no bank, but because... No, no, I'm limiting it to a bank. No bank lost any money, correct? That's correct. All right. Your case on bank fraud is that, even extending it now to the first time in the briefing and so forth to attempts, that by giving the crazy routing numbers and giving the banks checking accounts which don't exist, that that's within the bank fraud statute. That's your position, right? Yes, sir. Do you expect us to believe that that could be part of the statute of bank fraud, when common experience of all of us know that there's no way a bank is going to pay anything if it's not on the correct routing, and they won't pay a dime if there's not an account. If you give them a phony account, they're not going to accept any checks or make any payments. So you have a situation where no bank lost 10 cents, and he gave some crazy numbers in order to perpetrate a fraud, but no bank, if it ever came to them, would pay 10 cents. And there's nothing in this record that indicates that any bank was at risk, that they would have paid any money on an incorrect routing or on an account that didn't exist. What bank do you know that pays money on accounts that don't exist? Well, Your Honor, I will tell you that in the misdemeanor conviction that we are talking about, that's exactly what happened. Scott Rapallo wrote down erroneous numbers and then called the bank when they didn't honor the check and yelled at them, and they turned around and honored the check. They actually paid. Is that correct? That's correct. Okay. This case, there's no payment, and so in order for us to believe this to be within the bank fraud statute, we have to be satisfied as judges that this is a realistic thing that could occur by giving banks screwy routing numbers, which are obvious to any bank, and giving them checking accounts which don't exist. Now, is that your position, that you want to accept that as part of the bank fraud statute? Your Honor, you ask if a bank had lost any money? No. But the reason the VA credit union, the routing numbers were correct. Scott had an account at the credit union. It was insufficient funds. It was $1,300, a check. But the reason the bank didn't lose any money or the credit union was because Synergy guaranteed it, so there was no loss. Whatever the reason, you cannot defraud a bank unless the bank has defrauded for whatever reason. If you're moving it to an attempt, what you're asking us to do is be satisfied that if someone gives a check on insufficient funds or tries to have money negotiated through a bank on a screwy routing number, that that's within the bank fraud statute. And I have a lot of trouble accepting that as an attempt within the bank fraud statute. Well, it would be, as to Mr. Rapella, a factual impossibility for him to do it, and that's what makes it an attempt. But with respect to the VA. If it's factually possible. Because of the phony routing numbers. It can't be. Once you acknowledge that something is factually impossible to perpetrate, then it can't be an attempt. It can't be an attempt to murder someone who's already dead, for instance. That's a law school hypothetical. If someone is dead and you shoot them, that's not murder. Now, in this case, how can it be an attempt when it would be impossible for any bank to pay on what is obviously a screwed up routing number and an account which doesn't exist? Well, Your Honor, that doesn't negate Mr. Rapella's intent. He gave routing numbers for reasons I don't know that they were not valid. But I can't say whether he knew or he didn't know that they were valid. So it's his intent to defraud. If his intent is what's important, why isn't it significant that when asked what he was doing, he said, I was defrauding these companies? Speaking, it could be understood, about the computer companies. What is it in the record? Let me ask it this way. What is it in the record that you can point to that shows he had an intent to defraud the banks? And as you're doing that, I would like you to answer the question that I tried to pose earlier of, what are we to make of the government's statement that the victim was Sytergy? Sytergy wasn't indemnifying the banks. It was indemnifying the computer companies. So what are we to make of that assertion by the government at the plea colloquy? And what can you point to in the record that shows Mr. Rappel was saying, I'm going after the banks. I'm going to defraud the bank. Well, your Honor, Sytergy was reimbursing the computer companies, but in the absence of Sytergy, the computer companies would have looked to the banks for restitution. On what basis? I mean, that seems to me a very unusual argument to make. They're going to say you should have paid from accounts that don't exist or you should have paid us from accounts that don't have sufficient funds. That's your obligation because we advanced goods without getting payment first. You, the bank, are going to be out money. You really think that computer companies would have had any traction legally or in reality with banks on that argument? Or the bank would pay. The bank might pay, but the glitch in the system, your Honor, is that when Scott gave them this information, it initially checked out in their system. That's why they sent the stuff out, sent all the computer equipment out. It was only because of that error that Sytergy stepped in. Who sent out? Gateway and Dell and Staples. When Scott sent in the online order with the banking information on the online application. Which sounds like a fraud against the computer companies, right? We're trying to talk about fraud against the bank here. That one is what's at issue, right? Correct. Okay. So the question I acknowledge may be inartful, but I'm trying to get you to answer what in the record can you point to that shows he had an intent to defraud the bank? Not an intent to defraud the computer companies or through them or Sytergy, which is left to hold in the back, but the banks. Well, your Honor, if I am a computer company and I get an application that indicates false and fraudulent banking information in it, the intent there is to defraud the bank. How do you make that legal? He doesn't know that Sytergy is in place or that the computer companies are going to be made whole by anyone, but if I get you, a computer company, to send me equipment on the basis of banking information that I've given you and you've taken as valid, then I have defrauded you, the poor, foolish computer company. But how does that extend to I have defrauded the bank or intended to defraud the bank? Nobody seems to be arguing here, nobody, that the mail fraud conviction isn't solid, rock solid. It seems to be acknowledged in the briefing and plenty of ample evidence on the record to support that. I think what you're hearing, at least for me, is a little trouble understanding what you're pointing to in the record to show an intent to defraud the bank. You keep going back to he meant to take the money, but it seems he meant to take the goods, equivalent to money, and he meant to take them from the computer companies and he used false information to do it. But how does that translate into trying to defraud the bank? That's what I'm trying to get you to respond to. And if you've got something in the record where you can say it's here, this is how we knew he intended for some or all of that loss to hit the bank, show me. If you take, just for example, the VA Credit Union, the information he put down was accurate. When they sent him the goods, the bank would have sent them the money and they would have gotten that before the check was returned for insufficient funds. And in the instance that happened, but he's had $300 in the account and I think the check was worth $1,300, but the companies got the check before it was returned for insufficient funds. And it was Synergy that turned around then and made them whole. They would have... So your position is any time that you use, that you relate to a third party information which facially looks reasonable about a bank, and you fool that third party that because you invoked the name of the bank, you have committed bank fraud. I think with respect to the VA Credit Union, he did more than simply invoke. He invoked a routing number. He invoked a routing number that led to a legitimate account that led to his check number in that account. So it was more than just invoking the name. He was giving them that as a representation. Right. Well, it was a legitimate bank account. It was a representation, right. A representation to the computer company. I'm sorry. And that was a legitimate bank account he had. Yes, it was. Yeah. And the bank could pay it or not pay it when they got that. But he didn't... Let's get this back on track where the Rule 11 is really what we're talking about. In the Rule 11 proceeding, we've all read the proceeding of the Rule 11 plea. As Judge Jordan mentioned, the thing he acknowledges that he defrauded the companies, a number of which are mentioned in the indictment. But he never said, and we've all been involved in taking Rule 11 pleas and so forth. But there's no factual basis for the defrauding of the bank. Whether you're correct or not, there was nothing on that Rule 11 proceeding which said, yes, Your Honor, I defrauded the bank because I did this, that. There was no factual basis. The Rule clearly requires a factual basis for the plea. And the only factual basis was the conclusion that he defrauded, quote, the companies. How could we let that stand when, even if we buy your argument, it's that close a case, when there was, on the Rule 11 proceeding, no knowing acknowledgement of facts that could possibly be concluded as bank fraud? My argument to you would be that we don't just look at the transcript of the plea, but we look to the entire record in the case to determine the sufficiency of the factual basis for the plea. No, no, no. We're looking at Rule 11. This is a Rule 11 factual basis. Whether he's guilty or not, even if he is guilty, even if he is guilty, he cannot plead guilty unless he acknowledges factually. We're not going back to the case. We're going on to Rule 11 proceeding. That's what this case is about. He claims that he did knowingly plead guilty. That's the entire case that Mr. Batty has made here. He's not saying this ban is pure as a driven stove. He's saying that he did not knowingly plead guilty to bank fraud. And at the very, cutting everything off and going back to the beginning of the case, which is the Rule 11 proceeding, where in the Rule 11 proceeding did he say, yes, I gave a check which I intended the bank to pay even though there was no funds or I gave a screwy routing number and I thought that as meticulous as banks are and as technical as they are, I was going to get that check through, and therefore I plead guilty to bank fraud. There's nothing in that Rule 11 proceeding that even vaguely could be considered a factual recitation of bank fraud. All he says is the conclusion, I defrauded the companies and there were several companies involved in this indictment. How can we justify that? Why shouldn't we send it back for resentencing? The first question is I agree with you. That is exactly what the Rule 11 colloquy shows. But I think you need to go larger and look at the whole record as to what was meant by those companies and what Scott's intent was. Sending it back for resentencing, this is a case where there is a concurrent 41-month term on the second count. We're not involved in that. This case does not involve the concurrent. Whatever the defendant wants to do, he may be doing something good. He may be cutting his own throat. I don't know what he's doing. All I know is before us we have a violation, which Mr. Beatty says was a violation of Rule 11, and I've got to be very frank with you. We've all been in a lot of Rule 11 proceedings. There's nothing factually here which can even begin to be concluded as bank fraud. There's a conclusion that he defrauded someone, and he doesn't say he defrauded the bank by doing this or that. He defrauded companies. It may be the other companies in the indictment. The bank, he just gave them a song and dance, and that's it. There's no way you could know. You could read tea leaves. It can't have any revelation on that. If you look solely at the Rule 11 plea, I agree with you. Good. Let me ask you this. Is it clear that both the account numbers, both for the Citizens Bank and the credit union, is it clear that all the account numbers that were used, all the routing numbers that were used, they were the incorrect or inaccurate or fraudulent numbers? Your Honor, that's true with respect to Citizens Bank. It is not true with respect to the credit union, the VA credit union. They were valid. And there were insufficient funds in that. That's correct. Should we look at these two matters differently then, credit union and Citizens Bank? I believe part of my argument is that you can, that you could simply strike Citizens Bank from that account and still have a valid bank fraud. But to do that, we'd have to rule that under the bank fraud statute, any time a check is written for insufficient funds, that person could be indicted for bank fraud. Do you think that Congress, when they passed the bank fraud statute, thought that of the, I don't know how many, I'll take a wild guess and say tens of thousands of insufficient checks issued every year, that those people writing those checks could be indicted for bank fraud? Is that your position? Well, it is a broad statute, Your Honor, but I didn't want to step away from the microphone, but I believe I have it in a Third Circuit case where, yes, if you present a check to a bank and you know that you don't have sufficient funds in that account, you intend to take money that is not yours. Do you have any case decided in any circuit in which someone has been convicted of bank fraud by giving a check for insufficient funds? Just insufficient funds, a legitimate bank account, and the bank didn't clear for insufficient funds. I believe I do. If you will permit me, perhaps while Mr. Batty, if you have no more questions, I will look for it. I know I have something to that effect here. All right. I do have one question. Yes, sure. You've indicated that you think we could look at the insufficient fund issue and understand that there was an intent to defraud from that, an intent to defraud the bank from that. Is there anything in the record that indicates that the VA credit union had an overdraft policy or that Mr. Repella knew or had some belief that there was an overdraft policy? Is there anything in the record to that effect? There is not, Your Honor. Okay. Also, is there anything in the record that indicates that any bank I know that received a check on insufficient funds would not pay it? Is there anything in this record that indicates that by writing a check on insufficient funds, that this bank was in jeopardy of being defrauded of that money, that there weren't sufficient funds to cover? In other words, a lot of people write checks with insufficient funds thinking there's sufficient funds there. But to defraud the bank, you've got to show that you wrote the check, thought the bank would pay it, and knew when you wrote it that there was insufficient funds. Otherwise, what you're telling me is that any time anyone writes an insufficient fund check, that they're in that bank fraud statute without proof that they intended for the bank to pay the entire amount of the check and that they thought that they knew that there were insufficient funds at the time. Your Honor, there is evidence, but it is not on this record. I have the VA credit union account, and I know when deposits were made and when they weren't. Well, it's not on this record. I mean, we're dealing with this case. We're not dealing with a hypothetical case. True. But this case didn't go to trial because Mr. Rappella entered a plea of guilty, and so all of the evidence would naturally not have been adduced. Well, yeah, but the evidence was supposed to be adduced at Rule 11 proceeding factually to show that your position now is he wrote one check on an account which was a legitimate account, but there weren't sufficient funds in it, and that equates with bank fraud under the statute. Those facts are in the pre-sentence report, and I believe it does comport. If I write you a check and I don't have sufficient funds in it and you take it to your bank, you cash it, you get the money. When the bank sends it to the other bank and it turns back for being insufficient funds, somebody is out the money, not you but one of the two banks, because the check is honored before it is returned for insufficient funds. Thank you very much, Ms. Whitaker. Mr. Batty, you have five minutes to rebuttal. Yes, Your Honor. In terms of the arguments that the government has made concerning insufficient funds, it's the VA credit union check, it's the defendant's position that the government would have to show two things and the Brewster case quoted in my initial brief says this, that you have to show on an insufficient funds check you have to show additional facts that go to fraud and you have to show the risk of loss to the bank. The government has conceded that there are no additional facts. But doesn't that undermine your, you say the government conceded that there are no additional facts? Yes, I believe Ms. Whitaker did, that there are no additional facts. That are inaccurate. Yeah, but isn't that a different argument than saying that a crime here is factually impossible? I thought that's what we were dealing with. Your Honor, as our position is, it concerns the factual basis. There was nothing in the factual basis concerning any additional facts. And Ms. Whitaker has conceded, as I understand it, that all the information concerning the VA credit union check was accurate information. By definition, there are no additional facts pointing to intent to defraud the bank. And in terms of the insufficient funds, so that's one aspect of it that is not met under Brewster. And under the cases summarized in Brewster. And the second thing regards the insufficient funds aspect of it. Brewster says, as I believe it was Judge Shorten commenting, that there has to be evidence that the bank had a policy to at least consider giving an overdraft, honoring an overdraft. There's no representation in the district court. There's no representation in the brief. There's no appellate proffer that there was a policy at the VA credit union to honor overdrafts. And there's nothing in the pre-sentence report, other than what both counsel talked about today regarding the VA credit union check. Regarding Sytergy, Sytergy is clearly identified in the pre-sentence report and in the government's proffer at the change of plea as the victim in the indictment and in the colloquy at the change of plea hearing. In the indictment and the colloquy with the defendant, it's the online retailers who are identified as the victim. So it's the online retailers and Sytergy identified as the victim, but never the bank. In terms of this being an intended victim, the government argues today, and argued in the brief actually, that the defendant had a history of bank fraud. But I don't agree that it's a history of bank fraud. It's a history of bad checks. In terms of what's in the PSR, all the crimes listed there, the bad checks, are bad checks to third parties. There's nothing in the PSR, except for the bank larceny count, that talks of bank fraud. It's just bad checks to third parties. In terms of the allegation that in the one bank larceny case, Rappella yelled at somebody in the bank to honor his check, that may well be entirely true, but that doesn't have anything to do with our case. There's no evidence at all in our case that there was any yelling by Rappella, that there was any effort at all for him to get the VA credit union check on it. There was no reason for him to do that. Mr. Batty? There would be no reason for that. Mr. Batty, let me interrupt for just a moment. This is Judge Jordan. I have a quick question for you. Is there any relevance at all? We hear the government saying, I think what I understand the government to be saying is, this man has a long record of fraud, including sticking financial institutions with loss, and that is part of the record, and you could reasonably, a district court judge could reasonably have that in mind when considering the frame of mind that Mr. Rappella had when he was doing what he was doing here. Why don't you take that argument on and tell us whether there's any credence we should give to that argument. Judge Jordan, as I understand it, well, let me just say, as I understand your first question, there's no doubt that Rappella has had criminal intent as to each of their crimes, referenced in the pre-sentence report, absolutely no doubt of that. He has, he's a serial bad check artist, but that's not bank fraud. He gives checks, he gave checks to people so that they would, for example, the checks for rent that he gave people, and the check balance, that is not, there's no evidence of that, it's back to the insufficient funds argument again. There has to be, to federalize prosecution of insufficient funds checks, there has to be, to make it a violation of 1344, there has to be additional evidence of fraud and intent to the fraud, which there is here on the VA check, and there has to be, in addition to that, there has to be some showing of an overdraft policy at the bank where they would consider honoring the check. There's no representation of that, not even in the appellate file from the Court of Appeals. Thank you. So, that would be my approach to that. In terms of the argument that this case involves an attempt, off the top of my head, in terms of the law of attempt, there has to be the intent, and our argument here is that the way that the bank fraud statute works is that there has to be an intent to defraud the bank. And so, even if you talk about this as an attempt, there is absolutely no evidence anywhere that there was an intent to defraud the VA credit union. He was happy to get his computer, and could have cared less about the VA credit union or any other bank. With that, I will conclude my argument. Good. Any other questions? Good. Very good. Did you have a case you wanted to... Yeah, just tell us what it is. Oh, why don't you come up to the microphone. Sorry. Your Honor, it is Metcalfe v. Schwartz and 899x7 of 842. Good. Good. Thank you very much. 849. You have that? Good. We thank both counsels for a very helpful argument. Mr. Batty, it's good to hear your voice again. And we hope you're feeling well. Thank you, Your Honor. And the matter will take... This matter will be taken under advisement. Thank you. Please rise. This court is adjourned until Thursday, November 19, 2009 at 1 p.m. in Newark, New Jersey. Terry, are you still there? Hi, Trish. Hey. Can you hear me okay? I can hear you just fine. Okay. Great. Trish? Yep. What? No, we're glad that we could work it all out. Okay. Yeah, you sounded fine and, you know, I'm sure it picked up everywhere, so...